UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **GLEN ELDER** | **CIVIL ACTION NO. 24-0713** |
| **VS.** | **SECTION P** |
| | **JUDGE TERRY A. DOUGHTY** |
| **WARDEN NOLEN BASS, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Glen Elder, a prisoner at Tensas Parish Detention Center ("TPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately May 28, 2024, under 42 U.S.C. § 1983. He names the following defendants: Warden Nolen Bass, Assistant Warden Johnson, and Mayor Jarrob Bottley.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff states that the water at TPDC was off on multiple occasions: "September 15th to 24th of 2023, February 26, [20]24, February 29, [20]24, March 6, [20]24, March 28, [20]24, . . . [and from] 7-7-24 [to] 7-11-24." [doc. # 12, p. 1]. Plaintiff claims that he was forced to defecate in a clear bag five times because of the lack of water at TPDC and resulting inoperative toilets. [doc. # 1, p. 3]. He states that the experiences were humiliating and embarrassing, depriving him of dignity and decency. [doc. # 12, pp. 1, 4].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Plaintiff had to "put [his] bag of feces [] in the big bag in the shower full of feces and urine by (80) inmates . . . [sic]." [doc. # 1, p. 3]. He suggests that the bags of feces in the shower were removed hourly. *Id.* He states that he is "now unable to bond socially and mentally" because he was exposed to biohazardous waste. [doc. # 12, p. 2].

Plaintiff suggestively claims that he had to shower near the large bag of feces located in the shower area, which exposed him to health and safety hazards. [doc. # 12, pp. 1, 3]. He states that staff dragged the bags when they removed them, causing the bags to leak excrement and urine on the floor. *Id.* at 5. The floor was "not sanitized or regularly cleaned." *Id.*

Plaintiff claims that he had to urinate in either a shower or toilets full of feces because D-Dorm lacks a urinal. [doc. #s 1, p. 3; 12, p. 2]. He states that the feces and urine odors in his dormitory were extremely bad and placed his health at risk. [doc. # 1, pp. 3-4]. He breathed the odors in all day, and he had headaches, a running nose, dry coughs, and irritation to his lungs, throat, and eyes. [doc. #s 1, p. 4; 12, p. 3].

Plaintiff claims that when the water was off at TPDC, he only received between 1-5 bottles of water each day for brushing his teeth, washing/showering, cooking, and drinking. [doc. # 1, p. 4]. In an amended pleading, he states that he was provided one 16-ounce bottle of water after each meal. [doc. # 12, p. 1]. He states that he was unable to shower or wash his face for substantial lengths of time. *Id* at 3-4. He was also unable to wash his hands after defecating and before eating. *Id.* at 6.

Plaintiff claims that the large bags of excrement are not all "going in the dumpster"; some are disposed of "on the side of the shop in [] massive piles to be burned in a deep hole[,]" which allegedly pollutes the ground. [doc. # 12, p. 4].

Plaintiff claims that the lack of water and water pressure has made the pipes at TPDC extremely rusty, causing leaks. [doc. # 12, p. 5].

Plaintiff mentions that he lacked recreation when the water was off, and he also endured verbal abuse from staff. [doc. # 12, p. 6].

Plaintiff "suffered a serious injury from an attack of dysentery caused weight loss and psychological harm from [his] sporadic experiences . . . [sic]." [doc. # 12, p. 6]. For relief, he seeks: (1) a new urinal in Delta Dormitory; (2) the removal of the pile of feces outside; (3) the repair of the damaged sewage system and toilets; (4) the repair of the ventilation system; (5) mental and physical healthcare; (6) safety rails for the shower and paint for the shower floor; (7) the removal of rusted plates on the wall; (8) the repair of lights in the dormitory; (9) debris cleaned off of the ceiling; (10) the repair of water fountains; and (11) $500,000.00 for mental and physical pain. [doc. # 12, p. 7].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of

4

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Conditions of Confinement**

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure

that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of the "minimal civilized measure of life's necessities."[3] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[4] However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

---

[3] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

[4] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

Here, Plaintiff fails to plausibly allege that any defendant was deliberately indifferent. As to defendants' involvement or knowledge, he offers only the following, interspersed irregularly throughout his amended pleading:

- "He could no longer communicate whether professionally or personally with wardens . . . solely because of the way (TPDC)'s behaved in the times, inadequate sewage system or operable toilets, loss of water pressure and (continual) shut off of water supply from its population. [sic]."

- "Wardens Bass and Johnson and associates treated Plaintiff, who seeks rehabilitation through its correctional system, who hopes to become a law abiding human being but only being dehumanized . . . do to lack of sewage system, operable toilets 'do to lack of water.' [sic]."

- "Plaintiff has grieved in drama and complained several times and on several occasions as it relates to him being forced and deprived of living conditions inside his housing unit but has not seen any relief as supervisory officials Bass and Johnson has a responsibility to his staff and his prisoners and has illustrated some very poor or rather unethical behaviors in terms of them maintaining an exceptional living conditions for plaintiff condemns this is deplorable (MLM) my life matters so I got the courts involved. [sic]."

- "The Defendants and associates had the plaintiff using small clear trash bags, as a toilet, do to lack of operable toilet and lack of sewage system, to relieve myself, deprived of deprivation of dignity also my decency, being dehumanized. [sic]."

- "When the water comes back on Johnson comes in dorms and fighting with toilets. Do to packed with urine and feces and toilet paper . . . if flushed it runs over on the floor so they break up paper and feces and then manual flush to avoid back up and damaging the system and forced them to outside and pump on the ground also a 'continual lack of water.' [sic]."

[doc. # 12, pp. 2, 3, 6]. None of these allegations plausibly demonstrate that any particular defendant knew of yet disregarded a substantial risk of serious harm to Plaintiff.

Plaintiff at best suggests that Warden Bass and Assistant Warden Johnson could have known about some unspecified conditions (of the manifold he lists) during the sporadic, unspecified periods when the water was off, but there is no allegation that Bass and Johnson knew of a risk of harm that any particular condition(s) posed to *Plaintiff*. He does not allege, for

7

instance, that he informed any defendant that any condition or sum of conditions exposed him to a substantial risk of serious harm. *See Alexander v. Texas Dep't of Crim. Just.*, 951 F.3d 236, 241 (5th Cir. 2020) ("While Alexander reported the cell conditions to officers on shift, he cannot make the requisite showing that they *in fact* 'drew the inference' that there was a substantial risk of serious harm.").

Plaintiff does thinly suggest that he sent grievances or complaints about "living conditions" to an unknown person(s) and that Bass and Johnson did not provide him any relief. Even construed liberally and in his favor however, this opaque allegation does not plausibly reveal that he informed defendants that he was exposed to a substantial risk of serious harm. Aside from bluntly referring to living conditions (without specifying, for instance, whether he referred to inadequate flooring, rust on pipes or walls, unsanitary conditions, exposure to excrement, or lack of recreation), Plaintiff does not disclose the content of any grievance or complaint. Nor does he allege that he directed the complaints to defendants, specify the approximate date(s) he sent the complaints, or allege that defendants received and reviewed them.[5]

The undersigned is sympathetic to Plaintiff's alleged experiences, but Plaintiff does not plausibly allege wanton infliction of pain or the type of "'cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help'" that the

---

[5] *See Ball v. LeBlanc*, 792 F.3d 584, 595 (5th Cir. 2015) ("[A] prison administrator who has received an administrative remedy request is not necessarily made aware, without factual corroboration, that there is a substantial risk of serious harm."); *Ornelas v. Hamilton*, 2021 WL 4618465, at *2 (5th Cir. Oct. 6, 2021) (finding that a defendant was not aware of an excessive risk to the plaintiff where the plaintiff alleged that he sent letters to the defendant reporting abuse and asking for help because there was no allegation that the defendant saw or received the letters).

Fifth Circuit has "recognized as necessary to constitute deliberate indifference."[6] *See Davis v. Lithicum*, 574 F. App'x 379, 380 (5th Cir. 2014); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (observing that the Eighth Amendment prohibits the wanton infliction of pain). The Court should dismiss these claims.

### 3. Threats

Plaintiff claims that staff threatened him. He does not, however, allege that any named defendant threatened him. Even if he did, verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). Allegations of mere verbal abuse by prison guards simply do not give rise to a cause of action under Section 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *Siglar*, 112 F.3d at 191. "[M]ere allegations of verbal abuse or epithets, reprehensible though they may be, do not amount to a cognizable constitutional violation under Section 1983." *Matthews v. LeBlanc*, 2022 WL 2951759, at *1 (5th Cir. July 26, 2022).

Plaintiff does not state a claim of constitutional dimension. The Court should dismiss these claims.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Glen Elder's claims be **DISMISSED WITH PREJUDICE** as legally frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by

---

[6] In fact, Plaintiff suggests that Assistant Warden Johnson helped remove clogged toilets and prevented "back ups" when the water returned to TPDC. [doc. # 12, p. 6]. In addition, Plaintiff does not mention Mayor Bottley at all.

this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 27th day of August, 2024.

                                               Kayla Dye McClusky
                                               United States Magistrate Judge